UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TATYANA SCOTT,

Plaintiff,

     -v-

ABERCROMBIE & FITCH, INC. and
HOLLISTER, INC.

Defendants.
-----------------------------------------------------------X

COMPLAINT

17 CIV.

JURY TRIAL
DEMANDED

1.       This is a quid pro quo sexual harassment case under Title VII of
the Civil Rights Act of 1964 as Amended, a hostile work environment, retaliation
and gender discrimination claim, along with pendant New York City claims.
Plaintiff filed with the EEOC, received a probable cause finding, attached as
"Exhibit A," but conciliation failed and she received a right to sue letter.

## THE PARTIES

2.    Plaintiff is a resident of the City and State of New York.

3.    Defendants are affiliated corporations organized under the laws of the
state of New York that have offices in New York City at 665 Fifth Avenue..

## JURISDICTION AND VENUE

4.    Jurisdiction is proper in this district under 28 U.S.C. § 1331 in that this
action arises under the Constitution and laws of the United States, among them
Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of
1866, 42 U.S.C. § 1985(2); state and local claims are pendant under the same
common nucleus of operative fact.

1

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated

FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS

6. Plaintiff worked at Hollister/Abercrombie from 10/14 to 6/15. She was told that she got the job because of her looks.

7. Binns immediately made unwanted advances toward plaintiff. First he asked her out to some wine. She declined. She had just left a relationship and was not interested period,

8. Then, on Halloween, after he had asked several times, she accompanied him to dinner, but paid her own way.

9. Nevertheless, bit by bit, he came on to her physically, and even stated such things as he hired women based on their looks.

10. This is verified by the declaration of Tamika Headly attached as Exhibit B and incorporated herein.

11. Even when she was in Binns' good graces, he called her Claire, "which was his description, as he described, as a "dumb blonde," which he also called her repeatedly, without the classy moniker.

12. Other employees joined in and made fun of Tatyana similarly.

13. Bill started giving Ms. Scott extra hours, which of course meant extra money. Ms. Scott was happy about this.

14. Then, after a month and half they had sexual relations in the orientation

room.

15. Binns said. in a smooth way that if Scott wanted to keep getting hours and keep her job, I would not say anything

16. They had sex twice. Plaintiff did net consent but she did not say yes either. It was unwelcome contact by a supervisor with power who ran the night shift, and on fact had sex with many women.

17. After the second time, Ms. Scott told him his contact was unwelcome. It was then that the retaliation started. First, he stopped talking to her.

18. Second, at his instigation, she was made fun of and harassed by the entire night staff (she was an "overnight sales associate" although there were no sales at night).

19. She got good reviews at first, but after the attacks started, she was written up for the inability to do a task she wasn't trained to do.

20. She was called "n!gger b!tch" by a higher up named Dennis.

21. One person said she had "nappy" hair – a racial slur about the physical characteristics of Afro-descendants people.

22. She was accused of sleeping with managers, even though she only, reluctantly, had sex with one.

23. Binns told her that if she called Human Resources if she wanted to, but would certainly be fired. In fact, his prognostications were true. He knew how the company ran.

24. She was unwelcome by the employees, as encouraged by Binns, to such an extent that she could not even work. On one occasion a young man named

DeMarco brushed up against her and said "Ew!" and ran away, slamming the door.

25.    All of this was the genesis of making the poor choice – but being coerced nevertheless – od having sex with Binns.

26.    An upper manager spoke to Binns and the latter became enraged and screamed in front of everyone present, "Tatyana fucks the managers! She's a ho. She's dirty and has dirty n!gger hair."

27.    Although he was not fired for over a year later, he had to be taken out of the room by two men.

28.    Human resources was aware of this outburst but did nothing.

29.    A man named Patrick asked plaintiff to have sex with her; he called because the company openly posted employee phone numbers for no reason at the risk of harassment to women.

30.    Plaintiff gained twenty pounds during this period and started seeing a therapist. She's been diagnosed with depression and PTSD.

31.    She had at the time another job (and still has the same job) where her co-workers noticed the change in her demeanor.

32.    Other complaints she cannot document were not document, although Exhibit 2 provides some detail. It was an overnight boom room and Hollister knew well what was going on but looked the other way: Who cared about these kids on the midnight shift?

33.    She started to fear going out of her home and started drinking.

34.    One man hit her on the head at Hollister but it was caught on camera, so

he was fired. Only direct evidence warrants any discipline at Hollister.

35. To make things worse, after all this, plaintiff was fired allegedly, for creating a "hostile work environment" when she and another girl got into a texting match which, at its genesis, was based on the loss of her good reputation because she wouldn't sleep with Mr. Binns. She doesn't suggest the texting match was appropriate, but in comparison to quid pro quo harassment?

36. Finally, Binns was fired after the EEOC found probable cause for plaintiff and another young woman – upon information and belief the one with whom she had a texting match. She has no bad feelings about the woman now, and understands how a desire to fulfill a sexual desire can corrode not only a relationship between two people, but among several at the workplace when the manager doesn't get a little something something and is told to go away.

COUNT ONE
(DISCRIMINATION ON THE BASIS OF GENDER UNDER TITLE VII)
DISPARATE TREATEMENT AND HOSTILE WORK ENVIRONMENT

37. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

38. Defendant's discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a result of Plaintiff's sex.

39. Defendant's animus towards Plaintiff's gender, female, is revealed in instances where similarly situated male employees were treated differently than Plaintiff in respect to her in the terms, conditions, and privileges of employment.

40. The aforementioned acts of Defendant constitute unlawful discrimination

against Plaintiff in the terms, conditions and privileges of her employment because of her gender and in in violation of the provisions of Title VII.

41.     As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

COUNT TWO
(DISCRIMINATION ON THE BASIS OF GENDER UNDER NYCHRL)
HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT

42.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

43.     Defendant's discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a result of Plaintiff's gender, female, and show an animus of gender bias and an ignorance of their obligation to provide a non-hostile work environment.

44.     The aforementioned acts of Defendant constitute unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her gender and in retaliation against her in violation of the provisions of the New York City Human Rights Law.

COUNT THREE
RETALIATION UNDER THE TITLE VII

45.     Plaintiff repeats and realleges all previous paragraphs as if set forth herein.

46.     Plaintiff was terminated and then threatened with violating a confidentiality agreement in order to chill her rights under the Civil Rights Laws, at least in part, because she complained of unequal treatment in the workplace because of her sex and status as a domestic violence victim and defendant retaliated against her because of it.

47.     As a result of the foregoing, plaintiff has been damaged.

## COUNT FOUR
### RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

48.     Plaintiff repeats and realleges all previous paragraphs as if set forth herein.

49.     Plaintiff was terminated and then threatened with violating a confidentiality agreement in order to chill her rights under the Civil Rights Laws, at least in part, because she complained of unequal treatment in the workplace because of her sex and status as a domestic violence victim and defendant retaliated against her because of it.

50.     As a result of the foregoing, plaintiff has been damaged.

## COUNT FIVE
### QUID PRO QUO DISCRIMINATION UNDER TITLE VII

51.     Plaintiff repeats and realleges all previous paragraphs as if set forth herein.

52.     Plaintiff was subject to unwelcome advances by her manager, offered an inducement for providing sex in the form of additional hours, and retaliated against in the form of a further hostile work environment by Binns and other employees.

53.     As a result of the foregoing, plaintiff has been damaged.

COUNT SIX<br>QUID PRO QUO DISCRIMINATION UNDER THE NEW YORK CITY<br>HUMAN RIGHTS LAW

54.     Plaintiff repeats and realleges all previous paragraphs as if set forth herein.

55.     The above-mentioned facts state a cause of action under the New York City Human Rights Law.

56.     As a result of the foregoing, plaintiff has been damaged.

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

I. A judgment directing Defendant to reimburse and make Plaintiff whole for any and all earnings, including bonus payments, she would have received but for Defendant's discriminatory treatment and unlawful dismissal, including but not limited to, back pay, contractual damages and pension benefits;

II. A judgment awarding Plaintiff compensatory damages for mental anguish, loss of dignity, humiliation, and injury to livelihood in an amount that is fair, just, and reasonable, to be determined at trial, including reasonable attorneys' fees, as provided under applicable law.

III. A judgment awarding Plaintiff front pay;

IV. A judgment awarding Plaintiff punitive damages;

V. An award of prejudgment interest, costs and attorney's fees; and

VI. Such other and further relief that the Court may deem just and proper.

Dated: New York, New York
May 8, 2017

*Greg S. Antollino*

GREGORY ANTOLLINO, ESQ.
275 SEVENTH AVENUE, SUITE 705
NEW YORK, NEW YORK 10001
(212) 334-7397 gregory10011@icloud.com